COMMONWEALTH *vs.* ADAM NESTER. No. 91-P-54. June 22, 1992. *Rape. Practice, Criminal,* Continuance. *Evidence,* Scientific test.

The defendant was convicted of rape of a fifteen year old female. His defense at trial was that, although he had met the complainant, he had not had intercourse with her. Prior to trial, counsel had been given a laboratory report by the Commonwealth which in relevant part stated as follows:

"lb. *Vaginal smear slides* (2): Tests for seminal fluid residue containing sperm cells were negative on this item. . . .

"lc. *Vaginal swabs* (2): Same as Item lb. . . .

"2a. *Underwear:* This item consists of a pair of light blue, soiled underwear. Tests for seminal fluid residue were positive on the crotch area of this item. . . .

"2c. *Jeans:* This item consists of a pair of soiled blue jeans labelled 'Hunt Club 7.' The rear area, and lower legs appear soiled.

Tests for seminal fluid residue were positive on the crotch area of this item . . . .

"*CONCLUSION*: Tests for seminal fluid residue were positive on *Item 2a*, underwear, and *Item 2c*, jeans."

The defense had hoped to persuade the jury that the evidence of semen on the complainant's dirty undergarments and jeans[1] were from a prior encounter with someone else,[2] taking refuge in the fact that the vaginal smear slides and swabs taken from the complainant shortly after the defendant's encounter with her indicated no semen residue.

On appeal, he claims he was taken by surprise at trial by testimony that the vaginal swabs, too, showed evidence of semen, and claims error in the failure of the trial judge to grant a continuance of one day in order to obtain an expert to counter the unexpected evidence. We agree that the defendant should, in the circumstances, have been given a one-day continuance.

When the police officer who had taken the complainant to the hospital was asked to explain what a "rape kit" was, defense counsel sought a side bar conference in which he stated that he wanted to be sure "where this is going." He stated, "It's my understanding that no physical evidence of semen was found in the vagina." He also asked, "But, is there going to be any evidence that the rape kit indicated that there was semen in the vagina?" The assistant district attorney answered, "No."

The doctor who examined the complainant testified that the complainant was intoxicated ("drunk"), with a blood alcohol level of .167 and also testified that he did not find evidence of semen or of trauma.

It was the testimony of the next witness which the defendant claims required a continuance. Debbie Marie McKillop, a chemist in the crime laboratory for the Department of Public Safety, was the main Commonwealth expert. She testified that there are two screening tests for determining the presence of seminal fluid residue. One is a test for acid phosphatase, an enzyme that is found "in high concentrations [in] seminal fluid residue." The second is for choline, which is another component in seminal fluid. In addition, there is a test for sperm cells and a test for P-30, a male-specific protein found in very high concentration in seminal fluid residue.

---

[1] In response to defense counsel's question whether there was any way to tell when seminal fluid had been deposited, the Commonwealth's expert answered that seminal fluid is water soluble; if such fluid is found on clothing, it must be detected before the garment is washed.

[2] The complainant liked another young man. She testified that, when the defendant came to her as she was sitting on some steps in an alley, she was crying because the young man whom she liked "had said I had a crush on him too long and that he thought it had to stop."

When the chemist was questioned as to her findings concerning the vaginal swabs, the defendant objected, saying that, if the tests showed the presence of semen, such testimony should not be admitted because everything he had been provided with prior to trial showed no indication of semen or sperm. The objection was overruled when the Commonwealth pointed out that counsel was questioning the chemist about the laboratory report which had been furnished to the defendant.

The chemist testified that, as to the vaginal swabs, she had a positive test for the presence of acid phosphatase, although she was not able to identify sperm cells or to detect the presence of choline. She acknowledged that her laboratory report had indicated that the tests for seminal fluid residue containing sperm cells were negative on the swabs, but she also testified that it is possible to have seminal fluid residue without sperm cells and that it is possible to find evidence of ejaculation without finding sperm cells.

Both in her laboratory report and in her trial testimony, the chemist, in discussing the complainant's underpants and her jeans, indicated that the tests for seminal fluid residue were positive. The acid phosphatase test was positive on those items, but the expert could not identify any sperm cells or choline. The P-30 test was positive on those items.

After the conclusion of the testimony of another expert witness of the Commonwealth, defense counsel informed the judge that he had not expected the testimony concerning the positive acid phosphatase test on the vaginal swabs and "that the impression left with the jury was that the fact there was an A.P. [acid phosphatase] positive meant that there was semen." He indicated that he was caught unawares because "there is nothing in this report that says an A.P. test was done — my client is going to be awfully prejudiced if I don't have the opportunity to develop more the fact that the test is not only fallible, but that the P-30 test suggests more in favor of the defendant that there is no semen."

Defense counsel at first wanted to recall the first Commonwealth expert. The assistant district attorney stated that, although the acid phosphatase test was positive, the chemist had said there were no sperm cells found in the vaginal swab or the slides. She argued that the report indicated that it was negative and that she did not "know how defense counsel can determine what the impression is on the jury."

The judge said he agreed with her "and not defense counsel. I don't think there was that impression at all." After additional discussion and a review of the transcript, the judge saw it "as a purely negative result as far as this witness is concerned." He ruled that defense counsel could recall the chemist as his own witness or could call a rebuttal witness but could not delay the trial.

The next morning, counsel said he had spoken to the Commonwealth's chemist. He had also spoken to an independent chemist who had testified in over a hundred criminal trials and who would refute much of what

McKillop had said about the swab and about the nature and accuracy of the test that she had performed. Since the independent chemist was unavailable on that day, counsel sought a continuance.[3] After the Commonwealth objected, the judge denied the continuance, repeating that his "listening to testimony indicated very little that was unfavorable to the defendant."

Although we are hesitant to analyze the impact of evidence in a way different from the trial judge, and although the granting of a continuance is a matter on which the trial judge has considerable discretion, we think defense counsel was surprised by the testimony through no fault of his own. Indeed, as indicated by the assistant district attorney's answer referred to earlier, she, too, did not expect that there would be evidence from the rape kit that would indicate semen in the vagina. It thus appears that both the prosecution and defense counsel had read the report ("tests for seminal fluid residue containing sperm cells were negative") as to the vaginal swabs as meaning no seminal fluid was found. Despite the judge's characterization that there was "very little that was unfavorable to the defendant," we think the jury could have determined that the vaginal swabs showed semen. The chemist testified that the acid phosphatase test, one of the two screening tests for semen, was positive on the vaginal swabs, the jeans, and the underwear. She could not identify any sperm cells or the presence of choline on any of these items. Thus, three of the tests showed the same results for the swabs and the clothing. As to the jeans and the underwear, she concluded that the items tested positive for semen. Only a careful review of the transcript reveals that there was a P-30 test made on the clothing items. There was no testimony as to whether the P-30 test was made on the swabs.

Both counsel were misled and did not realize that the wording of the laboratory report left open the possibility that there was semen but no sperm cells. In these unusual circumstances, and where the complainant was "drunk" and her clothes very dirty, the defendant should have been allowed a short continuance to counter the unexpected testimony of the chemist. An expert might have laid stress on the P-30 test and might have suggested a different conclusion about the positive findings of acid phosphatase on the vaginal swabs. Such testimony might have bolstered the claim that the complainant in her intoxicated state might have been in error as to whether she had had intercourse with the defendant. We conclude that the defendant showed sufficient surprise and prejudice to merit an opportunity to present such evidence to the jury, cf. *Commonwealth* v. *Dotson*, 402 Mass. 185, 189 (1988), particularly where only a day's continuance was needed.

---

[3]Although defense counsel did not state clearly on the record that his expert would be available the following day, the judge, in ruling on the request, referred to "the matter of continuing the case a day."

*Judgment reversed.*
*Verdict set aside.*

*Carol A. Donovan*, Committee for Public Counsel Services, for the defendant.

*Danielle Barshak*, Assistant District Attorney, for the Commonwealth.